IN THE UNITED STATES DISTRICT COURT RECEIVED
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHISN DIVISION   2014 FEB 25  P 3: 43

| | | |
|---|---|---|
| DANYL LOCKS, | ) | DEBRA P. HACKETT, CLK |
| | ) | U.S. DISTRICT COURT |
| Plaintiff, | ) | Civil Action No.: DISTRICT ALA |
| | ) | 2.14-CV-121- |
| -vs- | ) | |
| | ) | |
| KOCH FOODS OF ALABAMA LLC, | ) | **JURY TRIAL DEMANDED** |
| AUTOMATION PERSONNEL | ) | |
| SERVICES, INC., and | ) | |
| ONIN STAFFING, LLC., d/b/a | ) | |
| THE ONIN GROUP, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

---

## COMPLAINT

---

COMES NOW Plaintiff Danyl Locks, by and through his attorneys, and for his complaint against Defendants Koch Foods of Alabama, LLC, Automation Personnel Services, Inc., and Onin Staffing, LLC, d/b/a The Onin Group hereby states and alleges as follows:

### NATURE OF THE CASE

1.      This is an action for damages, declaratory and injunctive relief to redress deprivation of rights secured by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), *et seq.* as amended by the Civil Rights Act of 1991, (hereinafter "Title VII"), and 42 U.S.C. § 1981, as amended by the Civil Rights Act of 1991(hereinafter § 1981), for retaliation for having complained of racial discrimination.  This lawsuit also asserts a

claim for violation of the Racketeer Influenced and Corrupt Organizations ("RICO") statute, 18 U.S.C. §§ 1961-1968.

## JURISDICTION AND VENUE

2.      This action arises under the Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000(e), *et seq*., as amended by the Civil Rights Act of 1991, under the Civil Rights Act of 1866, 42 U.S.C. § 1981 and under 18 U.S.C. § 1965.

3.      Jurisdiction of this Court is also invoked pursuant to 28 U.S.C. §§1331, 1343(a)(4) and 1367.

4.      Venue is proper pursuant to 28 U.S.C. § 1391(b) and (c) since Defendants do business in this district and a substantial part of the conduct giving rise to the claims occurred in this district.

## PARTIES

5.      Plaintiff Danyl Locks, (hereinafter "Locks" or "Plaintiff") is an individual over the age of 19 and a resident citizen of Union, Parrish Louisiana.

6.      Defendant Koch Foods of Alabama, LLC (hereinafter "Koch Foods" or "Defendant") is an Alabama limited liability corporation with its principal office and place of business located in Montgomery, Alabama. Defendant does business in the State of Alabama, including this district, and employs at least fifty (50) persons.

7.      Defendant Automation Personnel Services, Inc., ("Automation" or "Defendant") is an Alabama limited liability corporation with its principal office and place of business located in Hoover, Alabama.

8.      Defendant Onin Staffing, LLC, d/b/a The Onin Group (hereinafter "Onin" or "Defendant") is an Alabama corporation with its principal office and place of business located in Birmingham, Alabama

9.      Defendant Koch Foods at all times material hereto, was Plaintiff's employer as defined by Title VII, 42 U.S.C., § 1981, and applicable law.

## ADMINISTRATIVE PROCEDURES

10.     On or about April 11, 2013, within 180 days of learning of the acts of discrimination of which he complains, Locks filed a charge of discrimination with the Equal Opportunity Employment Commission (hereinafter "EEOC"), Charge No. 420-2013-01698. (See Exhibit A).

11.     More than 180 days have elapsed since Locks filed the charge with the EEOC.

12.     Locks received a Notice of Right to Sue from the EEOC on or about December 2, 2013. Less than ninety (90) days have elapsed since Plaintiff Locks received same. (See Exhibit B).

13.     All prerequisites for bringing this action have been met.

## STATEMENT OF FACTS

14.     On or about June 4, 2009, Plaintiff Locks was hired as a shift manager for Defendant Koch Foods' poultry company located in Montgomery County, Alabama. As a shift manager, the Plaintiff was responsible for supervising approximately 250 employees and 6 supervisors who were employed with Defendant Koch Foods.

15.     On or about June 14, 2012, while working at Defendant Koch Foods' facility located on Mobile Highway in Montgomery, Alabama, a Koch Foods supervisor

named Rebecca Jones was called into Plaintiff Locks' office to fill out paperwork. Specifically, Jones was required to finish his duties at the wash station and then come to Locks' office to complete the paperwork.

16.     Per company policy and procedure, when Jones left the production floor to go into Plaintiff Locks' office, Jones expressly stated to the lead person working under his (Rigoberto Morales) that he was in charge while she was being summoned to Plaintiff Locks' office.

17.     Further, per company policy and procedure, Jones gave Morales express instructions to wash only one chicken wing at a time prior to leaving the production floor.

18.     While Jones was in Plaintiff Lock's office, Jones was called back to the production floor by the Quality Assurance Supervisor, Tonya Lockley.    After arriving on the production floor, Jones was informed by Lockley that a male "Salvage" employee (Jorge Padilla) that worked for Defendant Koch Foods had been throwing 40lbs of wings at a time into the wash sink.   Padilla was a Hispanic male that normally worked on the night shift.  Since the foregoing incident occurred during the day shift on which Jones and Morales worked, Jones was not familiar with Padilla nor was Padilla under Jones' direct supervision.

19.     On or about June 14, 2012, Jones was further informed by Lockley that Rigoberto Morales had been washing the wings as they were thrown into the sink in 40lb increments instead of washing them one at a time as instructed by Jones.

20.     Because of the actions of Morales and Padilla, 1600 lbs of wings had to be discarded by Defendant Koch Foods.

21.     Prior to Jones being called back out to the production floor by Lockley,

Plaintiff Locks left the premises for the evening. However, once the Quality Assurance supervisor Lockley informed Jones of the improper washing incident above, Locks was called back to the plant by the plant manager, John Sanders who started an investigation into the washing incident described above.

22.     Prior to Plaintiff Locks returning to the plant, Sanders met with Jones, Lockley, Morales, Padilla and Padilla's supervisor. During this meeting, Morales admitted to Sanders that Jones had instructed him to wash one wing at a time but that he chose on his own to wash the wings 40 lbs at time once they were thrown into the wash sink by Padilla.

23.     While this meeting was taking place, Plaintiff Locks returned to the plant. Consequently, Sanders then held a meeting with Jones and Locks. During this second meeting, Plaintiff Locks explained to Sanders that he (Locks) called Jones into his office just prior to him leaving for the day so that Jones could complete some paperwork. Plaintiff Locks told Sanders that Jones was not present at the time the washing incident occurred and that his lead person (Morales) was in charge on the production floor.

24.     Notwithstanding Locks' account of the events and Morales' accounts of the events, on or about June 14, 2012, in Montgomery, Alabama, Plaintiff Locks gave Jones a "write-up" for the washing incident. On the same date and location, Sanders suspended Jones, Morales and Padilla.

25.     On or about June 18, 2012, in Montgomery, Alabama, Sanders told Plaintiff Locks that he (Sanders) was going to terminate Jones' employment with Defendant Koch Foods as a result of the washing incident described above but was not going to terminate Morales or Padilla.

26.     On or about June 18, 2012, in Montgomery, Alabama, Plaintiff Locks objected to Jones' termination.     Specifically, Plaintiff Locks explained that his investigation (Locks') into the washing incident matter revealed that the incident occurred while Jones was in Locks' office filling out paperwork. Further, Locks told Sanders that in spite of Jones lack of direct culpability, he (Locks) had written up Jones as a result of the incident. Plaintiff Locks informed Sanders that he felt that said write-up was sufficient and that Jones should not be terminated, especially given that Morales and Padilla were not being terminated.     However, despite Plaintiff Locks' objections, Sanders still opted to terminate Jones.

27.     On or about August 31, 2010, Tina Boyd, a former human resources employee of Defendant Koch Foods, filed a lawsuit against Defendant Koch Foods and other individual defendants. On or about October 26, 2011, Tina Boyd filed his First Amended Complaint in the United States District Court for the Middle District of Alabama. Further, on or about November 26, 2011, Tina Boyd filed his Renewed First Amended Complaint in the United States District Court for the Middle District of Alabama.

28.     In her Renewed First Amended Complaint, Boyd alleged among other things, that: (i) Defendant Koch Foods of Alabama discriminated against her because of her gender in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000(e), *et seq.*, as amended by the Civil Rights Act of 1991, and the Equal Pay Act; (ii) Defendant Koch Foods of Alabama discriminated against her because of her race in violation of 42 U.S.C. §1981, as amended by the Civil Rights Act of 1991; (iii) Defendant Koch Foods of Alabama discriminated against her by retaliating against her in

violation of Title VII and §1981; and (iv) Defendant Koch Foods of Alabama violated the Racketeer Influenced and Corrupt Organizations ("RICO") statute by knowingly concealing, harboring, shielding from detection illegal aliens in employment with Defendant and by encouraging or inducing illegal aliens to reside in the United States. Further, Boyd alleged that Defendant Koch Foods of Alabama's RICO violations were a direct and proximate cause of her termination due to the fact that she objected to and refused to hire illegal aliens.[1]

29.     With respect to her claims of race discrimination in violation of 42 U.S.C. §1981, Boyd alleged, in pertinent part, that she was "told to ignore policies and procedures, setting his up for failure and discipline." Specifically, Boyd asserted in her Renewed First Amended Complaint that race discrimination occurred when she "was terminated for hiring undocumented workers but white and Hispanic male managers would circumvent the rules to hire undocumented workers without retribution. This difference in terms and conditions was to set Plaintiff up for failure and result in her termination..."

30.     In the Boyd lawsuit, Defendant denied that it hired undocumented workers and/or illegal aliens as part of its business practices.

31.     On or about August 15, 2012, Plaintiff Locks provided deposition testimony as a fact witnesses in the case of Tina Boyd v. Koch Foods of Alabama, LLC; Koch Foods, Inc., and David Birchfield, Civil Action Number: 2:11-CV-00748-MHT. During his testimony, Plaintiff Locks provided strong circumstantial evidence that Defendant Koch Foods of Alabama did in fact employ undocumented workers and/or illegal aliens. Plaintiff Locks' testimony benefited and/or assisted Boyd by helping her to

---

[1] See Case 2:11-cv-00748-MHT-SRW Document 46.

prove her §1981 and Title VII discrimination claims as well as his RICO claims against Defendant Koch Foods of Alabama.

32.     With respect to the RICO claims, Boyd argued that Defendants Automation and Onin aided and assisted Defendant Koch Foods by providing undocumented workers to Koch Foods for employment as part of an ongoing enterprise.

33.     After the foregoing events, in mid-October 2012, in Montgomery, Alabama, Plaintiff Locks was written up for two separate incidents.

34.     Plaintiff Locks was written up in the first incident because he allegedly raised his voice at a female employee. In reality, in or about September 2012, Plaintiff Locks directed a female supervisor (Kelly Mims) to get another employee to help her. Plaintiff Locks did not raise his voice at Mims but nonetheless he was written up.

35.     The second incident occurred in or about mid-October 2012 in Montgomery, Alabama. Specifically, at said time and place, Plaintiff Locks noticed that a female employee in the Defendant's plant (Denise Martinez) was walking through the wet bath area of Defendant's plant and her pants leg was dragging on the ground getting wet. Plaintiff pointed out to Martinez that her pants leg was getting wet and told her to roll up her pants. However, Martinez had something in her hands and could not roll up her pants legs herself. Consequently, Plaintiff Locks asked Martinez if she would like him (Locks) to roll her pants legs up for her. When Martinez said yes, Plaintiff Locks assisted her by doing so.

36.     However, after helping Martinez at her request, Plaintiff Locks was written up by Defendant Koch Foods.

37.     In October 2012, a Koch Foods employee named Sheyonda Smith was in

charge of temp workers that worked for the Defendant.

38.     In or about late-October 2012, in Montgomery, Alabama, Plaintiff Locks informed Sheyonda Smith and two male employees of his intent to start a small business wherein he would purchase a van and transport the temp workers that worked at Koch Foods from their homes in Union Springs, Alabama to Defendant Koch Foods' plant in Montgomery, Alabama.

39.     After informing Smith and the male employees of his proposed business venture, Plaintiff Locks asked Smith and the two male employees if they knew a responsible person he could hire to be a driver.

40.     On or about October 25, 2012, in Montgomery, Alabama, Plaintiff Locks was told that Sheyonda Smith reported to Defendant Koch Foods that Plaintiff Locks had offered to buy her a van.

41.     The two male Koch Foods employees (Charles Smith and Jerome Brown) were witnesses to the conversation Plaintiff Locks had with Smith and told Koch Foods that Plaintiff Locks had not offered to buy Smith a van.

42.     On or about October 26, 2012, Plaintiff Locks was called on the telephone and told to come to the Koch Foods of Alabama plaint in Montgomery, Alabama on Monday, October 29, 2012.

43.     On or about October 29, 2012, Plaintiff Locks met with David Birchfield, a human resources executive at Defendant Koch Foods of Alabama. During the meeting, Birchfield stated that the Defendant had talked to witnesses who confirmed what Birchfield deemed to be sexual harassment and informed Plaintiff that he was terminated. However, neither Charles Smith nor Jerome Brown were listed on the list of witnesses

that Koch Foods showed to Plaintiff. Further, Birchfield had not spoken to Smith or Brown by the time of the October 29, 2012 meeting.

44.    The above stated reasons for Plaintiff Locks' employment termination were pretextual and the Defendant knew that said reasons were pretextual.

45.    Plaintiff Locks was terminated in retaliation for his objection to the unlawful termination of Rebecca Jones. Said termination of employment was because of Rebecca Jones' gender and/or because of his race.

46.    Plaintiff Locks was terminated in retaliation for his assistance in the investigation of and/or testimony provided in support of Tina Boyd's claims of race discrimination. Further, Plaintiff Locks was terminated as a direct and proximate cause of Defendant's violations of the RICO statute.

47.    At all material times hereto, Danyl Locks was and is a male of African American descent.

48.    The Defendant has engaged in a pattern and practice of unlawful retaliation when its employees exercise their statutory rights under Title VII and §1981 by complaining about, reporting, assisting in an investigation, and/or providing testimony concerning gender discrimination, racial discrimination and/or a hostile work environment.

49.    As a result of Defendant's unlawful retaliation against Plaintiff Locks and as a result of Defendant's statutory and tortious conduct, Plaintiff Locks has suffered and continues to suffer damages.

## COUNT I
### Violation of Title VII, 42 U.S.C. §§ 2000(e) *et seq.*, for Retaliation

50.    Plaintiff re-alleges and incorporates by reference all allegations contained

in each paragraph above as if asserted herein.

51.     Plaintiff engaged in statutorily protected activity under Title VII by communicating to his employer, during an internal investigation that he believed Defendant Koch Foods of Alabama was engaging in unlawful or wrongful conduct, to wit: the termination of Rebecca Jones for sexually (gender) and/or racially discriminatory reasons.

52.     Plaintiff suffered an adverse employment action in the form of a termination of employment.

53.     There is a clear causal connection between Plaintiff's protected activity and the adverse employment action taken against Plaintiff.

54.     Defendant's proffered reasons for Plaintiff's termination are pre-textual.

55.     Defendant, by and through its agents and employees, retaliated against Plaintiff as a result of his engagement in the protected activity detailed above and Plaintiff was damaged as a result of said retaliation.  These retaliatory actions by Defendant against Plaintiff directly relate to the terms and conditions of Plaintiff's employment with the Defendant and violate Title VII, 42 U.S.C. §§2000(e) et seq.,

56.     Defendant's actions have caused Plaintiff to suffer mental and emotional distress, entitling him to compensatory damages.

57.     Defendant has engaged in discriminatory practices with malice and reckless indifference to the Plaintiff's federally protected rights, thereby entitling him to punitive damages.

58.     Defendant Koch Foods knowingly and willfully discriminated against Plaintiff on the basis of his race in violation of Title VII.

**WHEREFORE,** as a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer lost wages, emotional distress, humiliation, damage to his professional reputation, loss of pay and/or income, back pay, front pay, compensatory damages, and punitive damages, in amounts to be proved at trial. In addition, Plaintiff seeks injunctive relief to prevent the discriminatory practices of the Defendant Koch Foods.

## COUNT II
### Violation of 42 U.S.C. § 1981, for Retaliation

59.    Plaintiff re-alleges and incorporates by reference all allegations contained in each paragraph above as if asserted herein.

60.    Plaintiff engaged in statutorily protected activity under The Civil Rights Act of 1866, 42 U.S.C. §1981 by communicating to his employer (the Defendant), during deposition testimony in a lawsuit involving race discrimination that the employer (the Defendant) engaged in the unlawful hiring of undocumented and/or illegal alien Hispanic workers.  The circumstantial evidence Plaintiff provided in his testimony greatly assisted the plaintiff's arguments in the underlying lawsuit (Tina Boyd) that she had been discriminated against based on his race.

61.    Plaintiff engaged in statutorily protected activity under The Civil Rights Act of 1866, 42 U.S.C. §1981 by communicating to his employer (the Defendant), communicating to his employer, during an internal investigation that he believed Defendant Koch Foods of Alabama was engaging in unlawful or wrongful conduct, to wit: the termination of Rebecca Jones for sexually (gender) and/or racially discriminatory reasons.

62.     Plaintiff suffered an adverse employment action in the form of a termination of employment.

63.     There is a clear causal connection between Plaintiff's protected activity and the adverse employment action taken against Plaintiff.

64.     Defendant's proffered reasons for Plaintiff's termination are pre-textual.

65.     Defendant, by and through its agents and employees, retaliated against Plaintiff as a result of his engagement in the protected activity detailed above and Plaintiff was damaged as a result of said retaliation.  These retaliatory actions by Defendant against Plaintiff directly relate to the terms and conditions of Plaintiff's employment with the Defendant and violate §1981.

66.     Defendant's actions have caused Plaintiff to suffer mental and emotional distress, entitling him to compensatory damages.

64.     Defendant has engaged in discriminatory practices with malice and reckless indifference to the Plaintiff's federally protected rights, thereby entitling him to punitive damages.

67.     Defendant Koch Foods of Alabama knowingly and willfully violated the Civil Rights Act of 1866, 42 U.S.C. § 1981.

**WHEREFORE,** as a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer lost wages, emotional distress, humiliation, damage to his professional reputation, loss of pay and/or income, back pay, front pay, compensatory damages, and punitive damages, in amounts to be proved at trial. In addition, Plaintiff seeks injunctive relief to prevent the discriminatory practices of the Defendant Koch Foods.

## COUNT III
## Violation of RICO and 8 U.S.C. §1324 (a)(1)(A)(iii)

68.     Plaintiff re-alleges and incorporates by reference all allegations contained in each paragraph above as if asserted herein.

69.     Defendant Koch Foods, Defendant Automation, and Defendant Onin are engaged in an enterprise that engaged in a pattern of racketeering conduct described more specifically below.

70.     Defendant Koch Foods of Alabama is and has been for years, active participants in an ongoing "enterprise," within the meaning of that word as it is used in RICO, 18 U.S.C.§1961 (4), in the form of running, managing, and operating chicken facilities as business operations with common purposes of (a) for financial gain by reducing labor costs of their business' operations and enterprise, (b) for financial gain by generating revenues and making money and profits in their business' operations and enterprise, (c) promoting their business' operations and "enterprise," the brand name of "Koch Foods," and the products sold and services Koch Foods of Alabama provides to customers of their business' operations and enterprise.

71.     The business operations run, managed and operated by Defendants and their enterprise, has been for many years an ongoing operation, and absent this Court's intervention, will probably and likely continue to operate, as a racketeering "enterprise" unlawful under RICO for the common purposes described above.

72.     Each Defendant participates in the management of the "enterprise" described above, including the operations of the "Montgomery processing facilities" and/or providing undocumented workers to Defendant Koch Foods for employment.

73.    Defendant spends some of the money and profits it earns and receives from promoting the brand name of "Koch Foods," and from the sales of chicken products sold and services performed by Koch Foods of Alabama for its customers of their chicken processing facilities for the benefit of Defendant Koch Foods of Alabama, and Koch Foods, Inc., to which Defendant Koch Foods of Alabama pays a salary to manage the "Montgomery processing facilities" part of the unlawful enterprise.

74.    In the enterprise, and particularly in the enterprise's "Montgomery processing facilities" Defendant Koch Foods of Alabama:

a.    hired and employed employees known to be illegal aliens and not authorized to work in the this Country (hiseafter called "illegal aliens");

b.    hired and allowed illegal aliens as employees and allowed them to remain employed despite the facts that:

i.    they were known by Defendant Koch Foods of Alabama's supervisors and management to be illegal aliens;

ii    they did not produce and could not produce valid documents demonstrating their true identities and eligibility to work in the United States, and

c.    contacted third parties (i.e. Defendants Automation and Onin) to supply it more individuals for employment, knowing that, or in reckless disregard of whether, the individuals so supplied and employed were illegal and ineligible to work or even be in this Country, and

    d.  allowed illegal aliens to work, clock-in, be on Defendant Koch

        Foods's payroll, have jobs and earn income under names and

        Social Security ("SSN") numbers, that were not theirs to use,

        which they were nonetheless knowingly allowed to use.

  75.  Defendant Koch Foods knowingly accepted false and counterfeit documents presented by illegal aliens falsely trying to establish their eligibility to work in this Country when they were not eligible to do so.

  76.  Defendant Koch Foods knowingly signed and approved I-9 forms for illegal aliens (based on false and counterfeit documents they presented) who were not eligible to work or even be in this Country.

  77.  Under a regulation of the U.S. Department of Homeland Security, an employee has only "three business days of the hire" to present the necessary papers for completion of his/hisI-9 form. 8 C.F.R. §274a.2(b)(1)(ii) (emphasis added).

  78.  Defendants Koch Foods, Automation and Onin have a years-long pattern and practice and have regularly done business in an "enterprise" that does not comply with 8 C.F.R. §274a.2(b)(1)(ii), and that does not follow-up to make sure illegal aliens present and have presented the necessary papers for completion or timely completion of his/his I-9 form and to establish his/his eligibility to work in the United States.

  79.  Instead Defendants and their "enterprise" have for years engaged in the patterns of unlawful racketeering practices described herein.

  80.  During his employment with Defendant Koch Foods of Alabama as shift manager Plaintiff was aware that Defendant employed individuals who could not provide, or timely provide, documents sufficient to establish their eligibility for employment in

this Country. Plaintiff was aware of this because he personally observed employees who worked for Defendant leave and later return for employment with Defendant and upon their return, these individuals would be employed under different names and identifying documents than those used when the individual was previously employed with the Defendant.

81.    During his employment with the Defendant Koch Foods of Alabama, Plaintiff revealed that Defendant Koch Foods knowingly or in reckless disregard employed illegal aliens.

82.    As a regular part of their "enterprise" Defendants, repeatedly committed predicate acts that violated:

    a.    8 U.S.C. §1324 (a)(1)(A)(iii), by "knowing or in reckless disregard of the fact that an alien had come to, entered or remains in the United States in violation of law, conceal[ed], harbor[ed] or shield[ed] from detection, or attempt[ed] to conceal, harbor or shield from detection, such aliens" in employment and in the buildings in which they worked at the "Montgomery processing facilities," by

        i. allowing known and suspected illegal aliens to use, in their illegal employment, names and Social Security numbers that were not theirs to use,

        ii. paying known and suspected illegal aliens on payroll under names and social security numbers that were not theirs to use,

        iii. allowing known illegal aliens to become and remain in

employment without requiring the to establish or timely establish
their eligibility for employment in the United States, all, separately
and together, as part of the steps, artifices and schemes
Defendants' enterprise used in violation of "8 U.S.C. §1324
(a)(1)(A)(iii), which makes it a federal crime to 'conceal[],
harbor[],or shield from detection' aliens that have illegally entered
the United States." Williams v. Mohawk Indus., Inc., 465 F.3d
1277, 1283 (11th Cir. 2006) (*per curiam*).  Allowing illegal aliens
to hide their true names and use names and Social Security
numbers that were not theirs to use, helped illegal aliens go
undetected by federal authorities.

b.    8 U.S.C. §1324 (a)(1)(A)(iv), by "encourage[ing] or induc[ing] an
alien … reside in the United States, knowing or in reckless
disregard of the fact that such coming to, entry or residence is or
will be in violation of law," by

i. allowing known and suspected illegal aliens to sue, in their
illegal employment, names and Social Security numbers that were
not theirs to use,

ii. to become and remain in employment without requiring them to
establish or timely establish their eligibility for employment in the
Untied States,

(1) preferring to employ, and so employing illegal aliens over
    American citizens who are lawfully and eligible to work in the

United States, all, separately and together, as part of the elaborate steps and artifices and schemes Defendants used in violation of 8 U.S.C. §1324 (a)(1)(A)(iv), which makes it a federal crime to 'encourage[] or induce[] an alien to … reside in the United States, knowing or in reckless disregard of the fact that such … residences is or will be in violation of the law.'" Id. Providing illegal aliens with employment in the United States encourages and induces them to reside here.

c.    8 U.S.C. §1324 (a)(1)(A)(v)(I)-(II), by engaging in conspiracies to commit, and aiding and abetting others to commit, the preceding violations described in subparagraphs (a)-(b above, and committing the overt acts described above in furtherance of such crimes.

83.    The activities described herein affect and affected interstate commerce.

84.    As of the termination of Plaintiff Locks' employment with Defendant Koch Foods, the conduct of the "enterprise" (described above) included multiple years and were an ongoing continuing, pattern, as a regular part of business, racketeering activity in violation of RICO 18 U.S.C. §1961(1)(F), in that Defendants and their "enterprises" repeatedly and violated and continue to violate "8 U.S.C. §1324 (a)(3)(A), which makes it a federal crime to 'knowingly hire [] for employment at least 10 individuals with actual knowledge that the individuals are aliens' during a twelve month period." Id.

85.    Under the management and oversight of Defendants scores, if not more

(and far more than two) of the predicate acts described above were part of the pattern of racketeering conduct in Defendants' "enterprise" described above.

86.    At the time Plaintiff's employment ended with Defendant Koch Foods of Alabama, the conduct unlawful under RICO as described herein was ongoing, had been going on for several years, and affected interstate commerce.

87.    Absent intervention of this Court, Defendants and their enterprise will continue to engage in such ongoing violations of RICO.

88.    The above-described illegal predicate acts regarding employment of illegal aliens had the purpose of and directly resulted in depriving Plaintiff and other lawfully employed individuals "business relations unhampered by schemes prohibited by the RICO predicate statutes." Williams, 465 F.3d at 1289.

90.    Plaintiff suffered direct injury to his business interests that were proximately and directly caused by the substantive RICO violations of Defendants and their "enterprise," which deprived Plaintiff "business relations unhampered by schemes prohibited by the RICO predicate statutes." Id.

91.    The RICO violations were substantially motivating factors for Plaintiff's discharge from employment with Defendant Koch Foods of Alabama. In other words, Plaintiff was discharged for revealing and/or not concealing that Defendant Koch Foods knowingly or in reckless disregard employed illegal aliens.

92.    The RICO violations were a proximate and direct cause of Plaintiff's discharge from employment with Defendant Koch Foods.

**WHEREFORE,** Plaintiff respectfully demands judgment, separately and severally against Defendant Koch Foods, Automation, and Onin as follows:

(a)    Declaratory judgment that Defendants, by and through their enterprise, are engaging, and have engaged, in a pattern of racketeering conduct in violation of RICO as alleged in this Court;

(b)    An injunction prohibiting Defendants, their agents and anyone acting in concert with them, from engaging in an enterprise that commits further violations of RICO as described in this Court;

(c)    Back pay and benefits

(d)    Reinstatement or, in the alternative in lieu of reinstatement, front pay and benefits,

(e)    Compensatory and punitive damages in amounts to be determined by the jury;

(f)    An award of treble damages, back pay and benefits, front pay and benefits awarded;

(g)    Plaintiff's reasonable attorney's fees, and expenses, plus costs; and

(h)    Any further relief deemed appropriate by the Court.


## COUNT IV
### Violation of RICO and 8 U.S.C. §1324 (a)(1)(A)(iv)

93.    Plaintiff re-alleges and incorporates by reference all allegations contained in each paragraph above as if asserted herein.

94.    As alleged above, Defendants violated 8 U.S.C. §1324(a)(1)(A)(iv).

**WHEREFORE,** Plaintiff respectfully demands judgment, separately and severally against Defendant Koch Foods, Automation, and Onin as follows:

(a)    Declaratory judgment that Defendants, by and through their enterprise, are

engaging, and have engaged, in a pattern of racketeering conduct in violation of RICO as alleged in this Court;

(b)     An injunction prohibiting Defendants, their agents and anyone acting in concert with them, from engaging in an enterprise that commits further violations of RICO as described in this Court;

(c)     Back pay and benefits

(d)     Reinstatement or, in the alternative in lieu of reinstatement, front pay and benefits,

(e)     Compensatory and punitive damages in amounts to be determined by the jury;

(f)     An award of treble damages, back pay and benefits, front pay and benefits awarded;

(g)     Plaintiff's reasonable attorney's fees, and expenses, plus costs; and

(h)     Any further relief deemed appropriate by the Court.

## COUNT V
### Violation of RICO and 8 U.S.C. §1324 (a)(1)(A)(v)(I)-(II)

95.     Plaintiff re-alleges and incorporates by reference all allegations contained in each paragraph above as if asserted herein.

96.     By their conduct, alleged above, Defendants violated 8 U.S.C. §1324(a)(1)(A)(v)(I)-(II), by conspiring to commit, and aiding and abetting, the above-described violations of RICO.

**WHEREFORE,** Plaintiff respectfully demands judgment, separately and severally against Defendant Koch Foods, Automation, and Onin follows:

(a)      Declaratory judgment that Defendants, by and through their enterprise, are

engaging, and have engaged, in a pattern of racketeering conduct in violation

of RICO as alleged in this Court;

(b)      An injunction prohibiting Defendants, their agents and anyone acting in

concert with them, from engaging in an enterprise that commits further

violations of RICO as described in this Court;

(c)      Back pay and benefits

(d)      Reinstatement or, in the alternative in lieu of reinstatement, front pay and

benefits,

(e)      Compensatory and punitive damages in amounts to be determined by the

jury;

(f)      An award of treble damages, back pay and benefits, front pay and benefits

awarded;

(g)      Plaintiff's reasonable attorney's fees, and expenses, plus costs; and

(h)      Any further relief deemed appropriate by the Court.


### COUNT VI
### Invasion of Privacy

97.      Plaintiff re-alleges and incorporates by reference all allegations contained
in each paragraph above as if asserted herein.

98.      Defendant Koch Foods has invaded Plaintiff's personal and emotional
sanctum by harassing and discriminating Plaintiff casting Plaintiff in a false and
inflammatory light and giving publicity to private matters of the Plaintiff.

99.     Defendant's conduct proximately caused the Plaintiff to suffer loss of pay and benefits, embarrassment, humiliation, loss of reputation, emotional distress, trauma, and mental anguish for which she claims damages as set out below.

**WHEREFORE,** as a direct and proximate result of Defendant Koch Foods' unlawful conduct, Plaintiff has suffered and continues to suffer lost wages, emotional distress, humiliation, damage to his professional reputation, loss of pay and/or income, compensatory damages, and punitive damages, in amounts to be proved at trial.

Respectfully submitted,

JERE L. BEASLEY (BEA020)

W. DANIEL "DEE" MILES, III (MIL060)

LARRY A. GOLSTON, JR. (GOL029)
Attorneys for the Plaintiff

OF COUNSEL:

**BEASLEY, ALLEN, CROW,**
**METHVIN, PORTIS, & MILES, P.C.**
Post Office Box 4160
Montgomery, AL  36103
(334) 269-2343  telephone
(334) 954-7555  facsimile

### JURY DEMAND

**PLAINTIFF HISEBY DEMANDS TRIAL BY JURY ON ALL ISSUES OF THIS CAUSE.**

LARRY A. GOLSTON, JR.